**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD B. WATERS,<br><br>    Petitioner,<br><br>    v.<br><br>RALPH M. DIAZ, Warden,<br><br>    Respondent. | No. C 14-04064 EJD (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction. Respondent filed an answer on the merits, and Petitioner filed a traverse. For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

## BACKGROUND

After a jury trial in Contra Costa County Superior Court, Petitioner was found guilty of two counts of second degree robbery and of being a felon in possession of a firearm. In a bifurcated proceeding, the trial court found that Petitioner had two prior strike convictions, two prior serious felony enhancements, and four prison priors. On February 1, 2012, Petitioner was sentenced to fifty-five years to life in

1  state prison. (Ans. at 1.)

2  Petitioner appealed his conviction, and the state appellate court affirmed.

3  (Id.) The state high court denied review. (Id.)

4  Petitioner filed the instant federal habeas petition on September 8, 2014.

## FACTUAL BACKGROUND

The California Court of Appeal summarized the facts as follows:

> The evidence adduced at trial showed that on the afternoon of October 3, 2009, two men entered Matthew Fink's bar where, in addition to Fink, an employee and two customers were present. One of the men was wearing a bandana as a mask. This man brandished a gun at Fink; the other man displayed a knife. Money was demanded and surrendered. The man with the bandana fired a shot at Fink just before the two men ran out of the bar, and drove away in a pickup truck.
>
> The truck, and the defendant, were located by police within an hour. The engine area was emanating heating, indicating recent use. Defendant matched the broadcast description ("white male wearing a khaki shirt, long sleeve, and blue jeans"). The truck was registered to defendant, and its keys were found on defendant (who was searched because he was on parole). Defendant's DNA was found on a bandana wrapped around the gun in the truck's engine compartment. Only one of the gun's cartridges had been fired. A sheath knife and badge with defendant's name on it were found under the truck's seat. Fink tentatively identified the truck ("it looked like"), and more positively identified the bandana as the one worn by the gunman. When first confronted with defendant (whom he knew but did not then recognize), Fink made a tentative identification: defendant's height was "similar," and he "could be the . . . guy with the mask." When later told that police had arrested defendant for the robbery, Fink responded, "it looks like you got the right guy," in part because he associated defendant's way of walking with "when that guy walked out with the gun on me, you don't forget that." Fink's brother, who was in the bar, was unable to make an identification of defendant, but he did think the bandana was the one worn by the gunman.
>
> Defendant was tested on the day of his arrest for the presence of gunshot residue, and none was found on him. But defendant's expert did concede that "a gun could . . . have been fired by a person even if no gunshot residue is found." No usable fingerprints were found on the knife. A fingerprint on the gun was not defendant's. DNA from several other persons was also on the bandana.
>
> Defendant did not testify

(Ans. Ex. 6 at 1-2.)

# DISCUSSION

## I. Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412; Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts

of the prisoner's case." Williams, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has vigorously and repeatedly affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions. See Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam); Harrington v. Richter, 131 S. Ct. 770, 783-85 (2011); Felkner v. Jackson, 131 S. Ct. 1305 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Id. at 1307 (citation omitted). With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claims.

**II.   Claims and Analysis**

Petitioner claims that trial counsel was ineffective for failing to adequately investigate and present an alibi defense.

The California Court of Appeal set forth the following background:

> As noted, the jury convicted defendant, following which he moved for a new trial on several grounds, one of which was that he "was denied effective assistance of counsel because his attorney withheld a defense that was requested by him." The motion was supported with a declaration by defendant, the gist of which was that at the time of the robbery, he was at a party being hosted [by] Scott Kirby, near where he was arrested. While at the party, defendant

loaned his truck to "a person named Scott Currier," and therefore "I was not in possession of my truck" at the time of the robbery. "On October 3, 2009, I was never at or near the ABC Rendezvous Bar... [¶] These facts were conveyed to my trial counsel. [¶]... [¶] On several occasions prior to and during trial I demanded that my trial counsel present this evidence in my defense of the charges. [¶] I was willing to testify on my own behalf at the trial and requested that my trial counsel allow me to so testify. It became a contentious issue and he would not agree to my testifying on my own behalf."

Attached as an exhibit to defendant's declaration was a "Statement of Scott Kirby" prepared by a private investigator dated January 10, 2011. The statement corroborated defendant's version of being at the party without his truck. However, Kirby also stated that defendant had in effect left the party before it ended. Kirby did not provide an iron clad timeline of defendant's presence at the party, and, indeed, allowed that defendant may even have left without Kirby's knowledge. Still, Kirby was emphatic that "'Rickey... was here. He couldn't have robbed the bar.'" Kirby promised to try to have "anyone with information pertaining to Rickey's whereabouts on the day of the barbeque/robbery" contact the investigator.

The motion was presented by counsel appointed for that sole purpose, after defendant's retained counsel was allowed to withdraw. Following an evidentiary hearing at which defendant and his former counsel testified, the trial court denied the new trial motion.

(Ans. Ex. 6 at 2-3.)

The state appellate court then denied the claim:

Ordinarily, this direct appeal would impose a difficult burden of proof on defendant. "'"...'Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] omission.'" [Citation.]' [Citation.] If the record on appeal '"sheds no light on why counsel acted or failed to act in the manner challenged[,]... unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected."' and the 'claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding.' [Citation."] (*People v. Vines* (2011) 51 Cal.4th 830, 876.) Here, however, we are not dealing with a silent record. Counsel provided that explanation when he testified at the new trial hearing. (See *People v. Williams* (2013) 56 Cal.4th 630, 690-91 [where factual basis for ineffective assistance of counsel claim is litigated as part of defendant's new trial motion, reviewing court may address that claim on direct appeal.])

Defendant's trial counsel's response to his former client's accusation was categorical. He did not advise defendant not testify, but he never would, and never did, refuse to let defendant testify – "I don't have that authority, and I would never say that to a defendant."

"[I]f a defendant tells me, in no uncertain terms, that I want to testify,... they get to testify... [¶] ... [O]nce they say that's what we really want to do, even after I explained to them the disadvantages in a particular case, they testify[.]" As for defendant's claim that he was prevented from testifying, "that didn't happen."

As for the alibi defense, counsel explained why it was not used: "[Defendant] gave me the names of some witnesses who were potential alibi witnesses. I sent an investigator to speak to them... [¶] And I was advised by my investigator and... by my client, at least two, maybe all three of them were heavy drug users. One of them, when my investigator went to speak to him, there was a drug transaction taking place in the hallway. [¶] ... [B]ut most importantly, the alibi witnesses were not consistent with each other, and at least one of them was wildly inconsistent with the undisputed facts in the case. [FN1]   [¶] ... [¶]   Well, there's no surer way to a conviction than presenting an alibi defense that the jury doesn't believe. And so... [¶] ... [¶]   I discussed it with him. It was not... like I told him you can't present an alibi defense. [¶] We discussed it, and we came to a joint conclusion that it wouldn't be a good idea. I mean, it went back and forth. I explained to him my reasoning for not presenting the alibi defense, and he went along with it." Defendant never demanded that the alibi defense be used.

> FN1. To wit: "[O]ne of the alibis placed him out of custody when he was already arrested which suggested to me the alibi would unravel rather quickly one it was [tested] by cross-examination."  And "there were differences in terms of the timing of the party, and one of them – I can't remember if it was Kirby or the other that he saw him there. He really wasn't keeping an eye on him [defendant]. So he couldn't vouch for his presence for anything longer than saying that he was there."

Defendant's testimony was that "I told him I want to testify, and he... said 110 percent no." Defendant discounted the importance of inconsistencies in the testimony of alibi witnesses: "because everybody was drinking and there was drugs there. So, you know, it was a big barbecue and it was... a year and a half later when they finally did testify [*sic*]/" Defendant admitted on cross-examination that he has prior convictions, "[a]nd that's the reason why Mr. Morris counseled you not to take the stand." When asked by the court, defendant acknowledged that two of his alibi witnesses were drug users, and the third erroneously " had you out of custody when you had actually already been arrested," "[b]ut I felt... that the jury should make that decision, not Mr. Morris."

"'[T]he trial court has broad discretion in ruling on a new trial motion...,' and its 'ruling will be disturbed only for clear abuse of that discretion.' [Citation.] In addition, '[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence.' [Citation.]" (*People v. Verdugo* (2010) 50 Cal.4th 263, 308.)

In the course of denying defendant's new trial motion, the

> court made an express "credibility finding" in favor of defendant's former counsel: "I found his testimony to be credible." The court further noted that former counsel was "a very experienced attorney. He... represented the defendant ably. He has 40 years of experience... he's a very, very experienced attorney."
>
> Certainly a criminal defendant has the absolute right to testify. (*People v. Carter* (2005) 36 Cal.4th 1114, 1198.) But the credibility finding made by the trial court is binding here. (*People v. Verdugo*, *supra*, 50 Cal.4th 263, 308). That finding establishes that the court accepted counsel's version that the decision not to testify was made by defendant himself, and was not imposed on him.
>
> As for the alibi defense, defendant did not call Kirby or Currier to testify at the hearing, and did not produce declarations by them as to their testimony. The weaknesses of the alibi witnesses, as described by defendant's former counsel, must therefore be accepted here. The legal question, then, is the decision not to call these persons to testify. That decision is tactical one entrusted to counsel. (See *People v. Vines*, *supra*, 51 Cal.4th 830, 878 [decision not to call witness because of concern over harmful material a valid tactical choice]; *People v. Floyd* (1970) 1 Cal.3d 694, 709-710 [decision on which witnesses to call is tactical choice, and not calling witness with prior criminal record to support alibi defense well within range of competence].)
>
> "A defendant does not have the right to present a defense of his own choosing." (*People v. Welch* (1999) 20 Cal.4th 701, 728.) We agree with the trial court that defendant failed to demonstrate that trial counsel was professionally deficient, still less that it reached constitutional magnitude. (See *Yarborough v. Gentry* (2003) 540 U.S. 1, 8; *People v. Maury* (2003) 30 Cal.4th 342, 389.) There was no error or abuse of discretion in the denial of defendant's new motion trial. (*People v. Verdugo*, *supra*, 50 Cal.4th 263, 308.)

(Ans. Ex. 6 at 3-6.)

To prevail on a Sixth Amendment claim for ineffectiveness of counsel, a petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 688 (1984). The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Id.

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. Cullen v. Pinholster, 131 S.Ct. 1388, 1410-11 (2011); Premo v. Moore, 131 S.Ct. 733, 740 (2011). The general rule of Strickland, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 131 S.Ct. 770, 788 (2011).

With respect to counsel's performance, Petitioner claims that counsel was ineffective for failing to personally interview any potential alibi witnesses before deciding not to present any of them at trial. The record shows that counsel sent an investigator to interview the three witnesses provided by Petitioner. See supra at 5-6. According to the investigator and Petitioner, two of the three witnesses were drug users. Id. at 6. But this fact aside, the more damaging information was that "the alibi witnesses were not consistent with each other, and at least one of them was wildly inconsistent with the undisputed facts in the case." Id. Petitioner claims that counsel should have met with them in person to evaluate their demeanor and credibility for himself. However, based on the information provided by the investigator, it cannot be said that counsel acted unreasonably in deciding that the potential alibi witnesses would cause more damage than help their case strictly based on the inconsistent information they provided; it was trial counsel's professional opinion that "there's no surer way to a conviction than presenting an

alibi defense that the jury doesn't believe." Id.  Meeting the witnesses personally and evaluating their credibility would not have changed the fact that their accounts were inconsistent with each other and that they could not account for Petitioner's presence for the entire time necessary to provide a strong alibi.  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  See Strickland, 466 U.S. at 689.  Under this highly deferential view, the Court finds that trial counsel's conduct was reasonable and well within professional norms.  See Babbitt, 151 F.3d at 1173.

Petitioner nevertheless asserts that counsel could have presented some alibi testimony to bolster the defense that the state had failed to prove the identify of the culprit.  However, the United States Supreme Court has never required defense counsel to pursue every nonfrivolous claim or defense, regardless of its merit, viability, or realistic chance of success.  Knowles v. Mirzayance, 556 U.S. 111, 125, 127 (2009).  Thus counsel's abandoning a defense that has "almost no chance of success" is reasonable, even if there is "nothing to lose" by preserving the defense.  Id. at 1419-20.

Petitioner also fails to show that he was prejudiced by counsel's performance.  As discussed above, the witnesses were not able to provide a strong alibi for Petitioner because they were not aware of his presence during the entire duration of the party:  "'there were differences in terms of the timing of the party, and one of them – I can't remember if it was Kirby or the other that he saw him there.  He really wasn't keeping an eye on him [defendant].  So he couldn't vouch for his presence for anything longer than saying that he was there.'"  See supra at 6.  Because the potential alibi witnesses were all drug users and their testimony was weak, it would not have been difficult for the prosecution to attack their credibility and to show that Petitioner could still have left the party and committed the robberies.  Accordingly, it cannot be said that had counsel presented alibi witnesses, the outcome of the

proceeding would have been different. Strickland, 466 U.S. at 694.

Petitioner specifically asserts that had Kirby testified at trial, he would have been able to establish that Petitioner had been at his barbeque around the time of the robbery, that Petitioner loaned his truck to another individual at the party, that Petitioner told Kirby that he was going to leave the barbeque to look for his truck, and that Petitioner left to do so. However, this testimony does not provide an actual alibi for Petitioner because it indicates that Petitioner may not have been present at the party during the time of the robbery. In fact, according to the statement taken by the defense investigator, Kirby did not know exactly when Petitioner left the party to purportedly look for his truck. (Ans. Ex. 1, Clerk's Transcript at 482-484.) Furthermore, the information regarding the loan of the truck and Petitioner's reason for leaving the party to look for it was based solely on what Petitioner told Kirby: (1) "As soon as Scott saw Rickey, Rickey explained that he had loaned his truck to someone and the person he loaned it to told him his truck was parked somewhere in the area of Bell Street," (id. at 482); and (2) "Rickey told him that on the day of Scott's barbeque he left to try and locate his truck in Scott's neighborhood," (id. at 483). Kirby did not actually see Petitioner loan the truck to anyone at the party nor was he aware at the time when or why Petitioner left the party. Because Kirby's testimony regarding the truck was based solely on what Petitioner told him, it is not likely that jury would have given it much weight such that they would have rendered a different verdict. The evidence connecting Petitioner to the robberies was strong, and the identification by the victims was convincing. See supra at 2. Accordingly, it cannot be said that but for counsel's failure to present alibi witnesses, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

Because the state court's rejection of this claim was not an unreasonable application of Supreme Court precedent or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, 28 U.S.C. § 2254(d), Petitioner is not entitled to federal habeas relief.

## CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**. See Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED**.

DATED: 1/4/2016

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD B. WATERS,<br><br>   Plaintiff,<br><br>  v.<br><br>THE PEOPLE OF CONTRA COSTA COUNTY, et al.,<br><br>   Defendants. | Case No. 5:14-cv-04064-EJD<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 1/5/2016, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

 Richard B. Waters ID: AL0997
 CSP - LAC
 B1-109
 PO Box 4490
 Lancaster, CA 93539

Dated: 1/5/2016

                Susan Y. Soong
                Clerk, United States District Court


                By: /s/ Elizabeth C. Garcia
                Elizabeth Garcia, Deputy Clerk to the
                Honorable EDWARD J. DAVILA